IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NATHANIEL HUNTER LASARGE,<br><br>Defendant. | Case No. 22-CR-160-JFH |

**OPINION AND ORDER**

Before the Court is a notice of intent to admit evidence of other child molestation ("Notice") and an evidentiary supplement thereto filed by the United States of America ("Government"). Dkt. No. 29; Dkt. No. 35. Defendant Nathaniel Hunter LaSarge ("Defendant") objects to the Notice. Dkt. No. 36. For the reasons stated herein, Defendant's objection is SUSTAINED IN PART AND OVERRULED IN PART.

**BACKGROUND**

Defendant is charged with two counts of sexual abuse against the same alleged victim: one count of aggravated sexual abuse in Indian country for allegedly causing penetration between the penis of Defendant and the anus of S.M. by the use of force and by threatening and placing S.M. in fear that any person would be subjected to death, serious bodily injury, and kidnapping; and one count of sexual abuse of a minor in Indian Country for allegedly causing penetration between the penis of Defendant and the anus of S.M., a person who had attained the age of twelve (12) years but not yet attained the age of sixteen (16) years and who is at least four (4) years younger than Defendant. Dkt. No. 2. The timeframe for both counts is between October 24, 2021 and September 13, 2022. *Id.*

According to the Government's notice and supporting evidence,[1] Defendant and S.M. are first cousins. S.M. is currently fourteen (14) years old and has twin siblings, M.M. and M.L.M., who are currently twelve (12) years old. The Government submitted sixty-nine (69) pages of documentary evidence along with video recordings of three forensic interviews—one with each S.M., M.M., and M.L.M.—in support of its Notice. Dkt. No. 35. The documentary evidence includes a Muscogee Nation Lighthorse Police Department report with incident reports, handwritten voluntary statements, chain of custody tracking forms, sexual assault nurse examiner ("SANE") reports, and summaries of child abuse pediatrics evaluations by child abuse pediatrician Dr. Michael Baxter. Dkt. No. 35-1. The Lighthorse report states "S.M. had been raped by force" and "M.L.M. and M.M. had been touched inappropriately." Dkt. No. 35-1 at 4. M.M. reported she had been touched inappropriately when she was eight years old and that M.L.M. had been touched inappropriately the night before, which would have been September 12, 2022. *Id.* at 6.

S.M.—the named victim in the indictment—reported to the SANE nurse a history of Defendant causing genital to anal, hand to genital, and hand to buttocks contact with him along with attempted kissing, pain during/after the act, and threats of harm that Defendant said, "Don't tell or I'm going to hurt you." Dkt. No. 35-1 at 44. The SANE nurse wrote in her narrative that S.M. was "very descriptive, even on unrelated details" and described two events. *Id.* at 50. First, during his eighth grade graduation party, S.M. said he went to the bathroom adjoining his grandmother's bedroom and when he came back out of the bathroom into the bedroom, Defendant pinned him to a bed, used his weight to push S.M. down, pulled S.M.'s pants down, and raped him. *Id.* Second, the day before the SANE exam, S.M. described that Defendant came into S.M.'s

---

[1] Defendant "does not agree with the truth of the factual background as it is set forth in the Government Notice" but does not provide any alternative background. Dkt. No. 36 at 2.

bedroom and "did the exact thing as before." *Id.* at 51. S.M. also reported a history of Defendant touching him inappropriately, "mostly [his] butt over [his] clothes." *Id.* at 50.

S.M. gave similar descriptions to the forensic interviewer. Dkt. No. 35-2 Ex. 4. He told the interviewer that during the first instance in S.M.'s grandmother's bedroom, Defendant put him in a headlock or chokehold, S.M. tried to "squirm" away, his body froze, Defendant anally penetrated him, he thought Defendant "got off in [him], if you know what that means," it hurt internally, and that he didn't bleed afterward but that his bottom felt wet. *Id.* S.M. described the second instance in his own bedroom as Defendant pinned him to the bed, changed positions while he anally raped S.M., caused bruising from being much bigger than S.M., put his weight on S.M. during penetration, and "got off in [him] again." *Id.* S.M. described both instances with sensory details including smells and sounds. He also said Defendant had begun touching him inappropriately on the buttocks when S.M. was around 11, that Defendant made S.M. touch Defendant's penis with his hand but that S.M. never masturbated him, and that Defendant threatened to hit S.M. if he told anyone about the events. *Id.*

M.M. reported to the SANE nurse a history of Defendant causing hand to genital penetration and mouth to mouth contact with tongue with her, along with threats of harm. Dkt. No. 35-1 at 57. She informed the SANE nurse there were two occasions, most recently a year before the exam. *Id.* M.M. described that Defendant picked her up while she was sitting on the floor playing video games, held her in the air, "started rubbing [her] private parts," "put his finger inside," "rubbed on [her] clothes down there then inside [her] pants" and told her "not to tell or he would hit [her]." *Id.* at 63. She said this happened twice, the first time two or three years before and the second time approximately a year before. *Id.*

3

M.M. also gave similar descriptions to the forensic interviewer. She told the interviewer that Defendant had "rubbed her private part" while she was laying on the floor, used his finger both outside and inside her body, kissed her on the mouth, and told her he would hurt her if she told anyone. Dkt. No. 35-2 Ex. 3. M.M. said Defendant's actions caused her to have pain and burning when she used the bathroom after the penetration. She also described a second instance where Defendant touched her genital area on top of her clothes in a swimming pool. She said no one made her touch their private parts. *Id.*

M.L.M. reported to the SANE nurse a history of Defendant causing genital to mouth, genital to anal, and genital to mouth contact with him, along with a "creepy kiss," which occurred "a lot" but last occurred "2 years ago." Dkt. No. 35-1 at 32. M.L.M. reported to the SANE nurse that, "He makes me do worse stuff than [M.M.] & [S.M.]. He put his private in my butt. He made me suck on his private part." and that, "It always happened when he came over to spend the night. The last time he did it was 2 years ago." *Id.* at 38. He also described an event in 2018 or 2019 when Defendant pinned M.L.M.'s head to Defendant's crotch while the two were on a trampoline.

M.L.M. also gave similar descriptions to the forensic interviewer. He said that the first time he was raped was when he was sleeping in his brother S.M.'s room, Defendant came into the room, "put his private part in [M.L.M.'s] bottom," and forced M.L.M. to "suck on his private part." Dkt. No. 35-2 Ex. 2. Defendant allegedly laid against the door during this so that no one could open it. M.L.M. told the interviewer that his body felt "disgusting" and his "bottom really hurt" afterward. M.L.M. said that the most recent time occurred two years before, when it "was basically the same thing"—Defendant lured M.L.M. into a bedroom, locked the door, then put his private part in M.L.M.'s bottom and made M.L.M. suck on his private part. *Id.* He also described the

4

trampoline incident, saying Defendant pushed his head and "directed it toward his crotch" but that other people came outside and Defendant let go. *Id.*

The three children mostly cross-corroborated each other. During the SANE exams, S.M. said his sister M.M. denied that Defendant had raped her but his brother M.L.M. reported Defendant had raped him; M.M. told the SANE nurse that M.L.M. "told [her] that it happened to him;" and M.L.M. said Defendant made him "do worse stuff than [M.M.] & [S.M.]." *Id.* at 38, 51, 63. They also referred to each other during the forensic interviews. For instance, S.M. told the interviewer that Defendant had sexually assaulted all three siblings and raped the two brothers, and M.M. told the interviewer that Defendant had been "touching" all three children. Dkt. No. 35-2.

## AUTHORITY AND ANALYSIS

### I. Rule 413/414

#### A. *Benally* Legal Standard

The Federal Rules of Evidence generally prohibit "the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts." *United States v. Benally*, 500 F.3d 1085, 1089 (10th Cir. 2007) (citing Fed. R. Evid. 404(a)). However, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a). "Rule 414(a) contains identical language related to accusations of child molestation." *Benally*, 500 F.3d at 1090. Because the language and standards are identical, the Court adopts the Tenth Circuit's convention of referencing evidence offered under either of these provisions as "Rule 413/414 evidence." *See id.*

5

Rule 413/414 evidence

> must meet three threshold requirements before it may be considered for admission . . .
>
> (1) the defendant is accused of a crime involving sexual assault or child molestation;
>
> (2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation; and
>
> (3) the evidence is relevant.

*Id.* Once evidence meets *Benally*'s initial requirements, it is still "subject to the Rule 403 balancing test, which permits the exclusion of relevant evidence, if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* (internal quotation marks and citation omitted); *see* Fed. R. Evid. 403.

### B. *Benally* Analysis

*Benally* first requires a defendant be accused of a crime involving sexual assault or child molestation. For purposes of Rules 413 & 414, sexual assault is defined in relevant part as "any conduct prohibited by 18 U.S.C. chapter 109A" and child molestation is defined in relevant part as "any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child [under the age of 14]." Fed. R. Evid. 413(d)(1); Fed. R. Evid. 414(d)(1)-(2). Defendant is charged with violating two statutes within chapter 109A: 18 U.S.C. § 2241(a) and 18 U.S.C. § 2243(a). Dkt. No. 2. The

*Benally* next requires that the proffered evidence involves other sexual assault or child molestation. M.M. described Defendant rubbing her genital area both over and under her clothes, as well as Defendant penetrating her vagina with his finger. These actions fall within the definition of child molestation in chapter 109A. *See* 18 U.S.C. § 2246. M.L.M. described Defendant penetrating M.L.M.'s anus with his penis and inserting his penis into M.L.M.'s mouth on multiple occasions. These likewise fall within the relevant definition of child molestation. *See id.* The

behavior M.L.M. described where Defendant pushed M.L.M.'s head toward his genital area and let go when other people approached, while certainly sexually connotative, does not fall within the behaviors prohibited by chapter 109A because it did not involve physical genital contact or sexual pleasure derived from death, bodily injury, or physical pain. *See* Fed. R. Evid. 413(d); Fed. R. Evid. 414(d).

Finally, *Benally* requires the proffered evidence be relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less than it would be without the evidence." Fed. R. Evid. 401. Relevance of Rule 413/414 evidence is explained by its legislative history, which relied "on the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes." *United States v. Batton*, 602 F.3d 1191, 1196 (10th Cir. 2010) (internal quotation marks and citation omitted); *see also* 23 Charles Alan Wright et al., *Fed. Prac. & Proc. Evid.* § 5385 (April 2020 update) ("The legislative history makes clear that the drafters and Congress believed that evidence under Rules 413, 414, and 415 is relevant to prove propensity and that this includes the defendant's propensity to commit sexual assault or child molestation."). Defendant's alleged molestation of M.M. and M.L.M. is relevant to the Government's case against Defendant concerning S.M. because Congress has determined that examples of past sexual assault are relevant to determining whether a defendant committed a charged assault.

The *Benally* threshold requirements are satisfied. The Court next turns to Rule 403.

### C. *Enjady* Legal Standard

"[A] district court must recognize the congressional judgment that Rule [413/414] evidence is normally to be admitted." *United States v. Enjady*, 134 F.3d 1427, 1434 (10th Cir. 1988). However, before allowing admission, the district court must "fully evaluate the proffered evidence

7

and make a clear record of the reasoning behind its findings" as to Rule 403 and its required balancing test. *Benally*, 500 F.3d at 1091 (quotation omitted). To assess Rule 403's requirements in the context of Rule 413/414 evidence, courts weigh: "1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence," against "1) how likely [it is] such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct." *Enjady*, 134 F.3d at 1433.[2]  No single factor of the *Enjady* test is dispositive. *United States v. Mann*, 193 F.3d 1172, 1175 (10th Cir. 1999).[3]

### D. *Enjady* Analysis of Probative Value

#### 1. How clearly the prior act has been proven

Before considering the other *Enjady* factors, the Court must "make a preliminary finding that a jury could reasonably find that the 'other act' occurred by a preponderance of the evidence." *Benally*, 500 F.3d at 1090. Similar acts "must be established by sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Enjady*, 134 F.3d at 1433

---

[2] The second *Enjady* factor—probative value—involves five additional subfactors: "(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony." *Benally*, 500 F.3d at 1090-91.

[3] The Court notes Defendant claims the "'probative dangers' [test is] closely related to the traditional balancing of Rule 403, which is another required consideration for a district court when the government requests admission of Rule 414 evidence." Dkt. No. 36 at 10. In fact, the *Benally* and *Enjady* tests are the Rule 403 test for 413/414 evidence. *Mann*, 193 F.3d at 1173-74 ("In the sexual assault context, Rule 403 requires district courts to consider the [*Enjady*] factors."); *United States v. Sturm*, 673 F.3d 1274, 1285 (10th Cir. 2012) (describing *Enjady* as "setting forth Rule 403 test for Rule 413 evidence" and *Benally* as "extending *Enjady* to Rule 414 evidence").

(quotation omitted). Non-exhaustive examples of sufficient evidence include police reports, transcribed phone calls, Facebook conversations, interviews of witnesses, FBI 302 interview reports, other written materials such as victim deposition transcripts, and judicial records demonstrating that prior acts of child molestation resulted in guilty pleas and convictions. *See United States v. Nieto Regalado*, No. 19-CR-114, 2019 WL 5783730, at *2 (N.D. Okla. Nov. 6, 2019); *United States v. Perrault*, No. 17-2558, 2019 WL 1332584, at *2 (D.N.M. Mar. 25, 2019); *United States v. Vafeades*, No. 14-CR-153, 2015 WL 9273936, at *4 (D. Utah. Dec. 18, 2015); *United States v. McGirt*, 20-CR-50 at Dkt. No. 86 (E.D. Okla. Oct. 28, 2020).

Here, the Government submitted video forensic interviews of S.M., M.M., and M.L.M.; incident reports; handwritten voluntary statements; chain of custody tracking forms; SANE reports; and summaries of child abuse pediatrics evaluations by a child abuse pediatrician. Dkt. No. 35-1; Dkt. No. 35-2. Additionally, the evidence includes cross-corroboration among S.M., M.M., and M.L.M. *See Perrault*, 2019 WL 1332584 at *2. This evidence is sufficient for the Court to find that a jury could reasonably find by a preponderance that the other alleged child molestation occurred.[4]

**2. Factors demonstrating probative value**

To fully assess the probative value of Rule 413/414 evidence, courts must consider five additional subfactors: "(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of the prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony." *Batton*, 602 F.3d at 1198.

---

[4] Defendant provides no rationale supporting his argument that this factor could be best determined at or after an evidentiary hearing. Dkt. No. 36 at 5. As noted, courts routinely rely on documentary evidence akin to that submitted here to make a conclusion on the first *Enjady* factor.

Here, the prior acts and charged acts are similar. Defendant claims that "allegations involving sexual abuse of 8-year-olds are substantially different from allegations of sexual activity involving teenagers" and that M.L.M.'s description of being forced to perform fellatio on Defendant is dissimilar from the acts S.M. and M.M. each described. However, the Court does not insist on exact concurrence to find acts similar. In each case, Defendant would isolate a younger family member; penetrate the mouth, vagina, or anus of that individual with his finger or with his penis; and then threaten to hurt the individual if he or she reported the abuse. Defendant also allegedly touched or rubbed both S.M.'s clothed buttocks and M.M.'s clothed genital area. These similarities are sufficient for *Enjady* purposes to weigh toward admission.

Regarding the second, third, and fourth factors, the fact that the charged conduct and alleged prior acts all occurred within the past approximately four years weighs toward admission. M.M. described two occasions, while M.L.M. reported there were "a lot" of occasions. In any case, both 413/414 witnesses describe repeated events, which weighs toward admission. Defendant claims his eighteenth birthday is an intervening event between the 413/414 allegations (which began when Defendant was fourteen or fifteen years old) and the charged conduct (which involves a timeframe where Defendant was eighteen or nineteen years old). The Court agrees with Defendant that there is a difference in maturity between a fourteen or fifteen-year-old and a nineteen-year-old, but it declines to find Defendant's natural age progression to be an "intervening event" for *Enjady* purposes.[5] These factors weigh toward admission.

---

[5] Defendant also argues that his juvenile status at the time of the alleged prior acts dilutes the probative value of the evidence in general. Dkt. No. 36 at 7-8. "[T]he mere fact" that a defendant "was a minor at the time of his alleged [prior] sexual assaults" does not automatically outweigh other factors which may show probative value of the evidence. *United States v. Willis*, 826 F.3d 1265, 1274 (10th Cir. 2016). In another recent case, the Court extensively discussed similar cases across the Tenth Circuit and, based on them, concluded that the juvenile status of the defendant "dilute[d] but [did] not outweigh the significant probative value of the [413/414] evidence."

10

Defendant does not address the fifth subfactor in his briefing, instead saying it could be addressed at an evidentiary hearing. However, child molestation cases "require reliance on child victims whose credibility can readily be attacked in the absence of substantial corroboration. In such cases, there is a compelling public interest in admitting all significant evidence that will illumine the credibility of the charge and any denial by the defense." *United States v. Charley*, 189 F.3d 1251, 1260 (10th Cir. 1999) (quotation omitted). This weighs toward probative value.

All five of the probative value factors weigh toward admission.

### 3. How seriously disputed the material fact is

"The more seriously disputed the material fact, the more heavily this factor weighs in favor of admissibility." *Sturm*, 673 F.3d at 1286. The parties' dispute over whether Defendant sexually abused his minor cousin is the central issue of the case. This weighs toward admission.

### 4. Availability of less prejudicial evidence

Defendant claims the Government can avail itself of less prejudicial evidence by relying on DNA or other forensic evidence rather than 413/414 witnesses. Dkt. No. 36 at 8. However, as stated above, there is a compelling public interest in admitting all significant evidence in a child molestation case where credibility is central to the jury's determination. *Charley*, 189 F.3d at 1260. The Court does not believe that forensic physical evidence would be a reasonable substitute for live witness testimony. This weighs toward admission.

The Court concludes the evidence has probative value favoring admission. This is not the end of the inquiry. The Court must weigh the *Enjady* factors against the unfair prejudice factors to determine if the evidence should ultimately be admitted. *Enjady*, 134 F.3d at 1433.

---

*United States v. Cole*, No. 22-CR-98-JFH, 2022 WL 17987066, at *11 (E.D. Okla. Dec. 29, 2022). The Court adopts the same rationale and result here: Defendant's young age during the prior conduct weighs against admission but not so strongly as to tip the balance of the other factors.

11

### E. *Enjady* Analysis of Prejudicial Dangers

#### 1. Risk of improperly-based verdict

Defendant brings a conclusory claim that "allegations of M.M. and M.L.M. that they were perhaps as young as 8 years old . . . would be very likely to contribute to an improperly-based jury verdict." Dkt. No. 36 at 10. Although the 413/414 witnesses' young age and the severity of the allegations carry emotional heaviness, evidence is only unfairly prejudicial if it "tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocense [sic] of the crime charged." *United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010) (emphasis in original) (quotation omitted). Child sexual abuse evidence undeniably may provoke strong emotions in listeners. However, its emotional impact is inextricably linked with the character of the alleged wrongdoing. The Court cannot conclude that the evidence would "affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocense [sic] of the crime charged." *Id.* Moreover, should the Rule 413/414 evidence be presented, the Court intends to give a proper limiting instruction if requested. Because jurors are presumed to follow the Court's instructions, the Court finds the evidence of Defendant's other actions would be unlikely to contribute to an improperly based jury verdict. *See United States v. McHorse*, 179 F.3d 889, 897 (10th Cir. 1999) ("A central assumption of our jurisprudence is that juries follow the instructions they receive.").

#### 2. Risk of distraction

Although the Court finds there is some risk that presenting victims of uncharged acts to the jury will distract the jury from considering the central issues at trial, the Court does not find that this risk is severe. Testimony regarding Rule 413/414 evidence may be narrowly tailored to reflect the similarities between Defendant's treatment of the three siblings. For the reasons previously

discussed, Defendant's alleged conduct toward M.M. and M.L.M. is relevant to the material issue in the case, and as such, the Court is not concerned that the testimony will be unduly distracting or inflammatory to the jury. Additionally, any risk of jury distraction can be minimized by the limiting instruction and the Government efficiently presenting M.M.'s and M.L.M's testimony.

### 3. Time considerations

As discussed above, the Court believes that the similarities between the alleged acts may be presented efficiently and through narrowly tailored lines of questioning. Thus, the Court does not find that the Rule 413/414 evidence will be unnecessarily time consuming.

### CONCLUSION

IT IS THEREFORE ORDERED that Defendant's objection to the Government's 414 notice [Dkt. No. 36] is SUSTAINED IN PART AND OVERRULED IN PART. Evidence of Defendant allegedly pushing M.L.M.'s head toward Defendant's crotch while on a trampoline is INADMISSIBLE under Rule 414. However, the other evidence described in the Government's notice [Dkt. No. 29] is ADMISSIBLE.

DATED this 10th day of February 2023.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE